IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:   10-60833-CIV-COHN/SELTZER

BLUE MARINE SHIPPING
MEXICO S.A. DE C.V.,

    Plaintiff,

vs.

QV TRADING LLC,
a/k/a QV TRADING LLC U.S.A.,

    Defendant.
_____/

## ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Summary Judgment [DE 27], Defendant's Response in Opposition [DE 35], Plaintiff's Reply [DE 40],[1] Defendant's Motion for Extension of Time to Complete Discovery [DE 36] and Plaintiff's Response in Opposition [DE 45].  The Court has carefully considered the motions and related filings, and is otherwise fully advised in the premises.[2]

### I.  BACKGROUND

On or about March 19, 2010, Defendant QV Trading LLC ("QV") entered into a time charter agreement with Plaintiff Blue Marine Shipping Mexico S.A. de C.V. ("Blue Marine") whereby QV agreed to charter the vessel M/V SICHEM HONG KONG for a

---

[1] Plaintiff's Reply in Support of its Motion for Summary Judgment [DE 40] violates Local Rule 7.1(c)(2) because it is more than 10 pages.  The Court will not consider the arguments made beyond page 10 of that document.

[2] No reply in support of the motion for extension of time was filed by the deadline of February 24, 2011.

period of 12 months and "pay at vessel's delivery the charter hire and value of the bunkers in the sum of $539,098.76." Plaintiff's Statement of Undisputed Material Facts, ¶ 6 (admitted by QV [DE 38]); Agreement is Exhibit A to the Affidavit of Gabriel Montero [DE 27-2] and Exhibit B to Defendant's Response [DE 35-2] (hereinafter, "Charter Agreement"). The per day rate of the charter was $12,500.00 USD, bringing the total price of the one year charter to $4,562,500.00 USD. The charter agreement was to start between March 21 and March 26, 2010 ("laycan" period). Charter Agreement. The vessel was made available to Defendant on March 25, 2010 at the Port of Mobile, Alabama. Affidavit of Gabriel Montero, ¶ 7. Defendant acknowledged the vessel's availability on March 26, 2010. Exhibit B to Montero Affidavit [DE 27-3]. Plaintiff billed Defendant for the first month of the daily rate plus the bunkers on board (fuel), but that bill was not paid. Exhibit C [DE 27-4]. On March 30, 2010, Plaintiff sent a demand letter to Defendant regarding the invoice for $539,698.67. Exhibit D [DE 27-5].

Defendant does not put forth facts to contradict Plaintiff's facts. Rather, Defendant picks up the story from this point by asserting that the Charter Agreement allowed QV to sublease the vessel, that QV contracted with World Gas Belize on April 6, 2010 to sublease the vessel to World Gas Belize, and that Blue Marine approved the sublease. Affidavit of Luis Quintero, ¶¶ 7-8 [DE 35-1]. On April 7, 2010, upon contacting Blue Marine, QV was informed by Blue Marine that it had leased the vessel to another party. Id., ¶ 9.[3] Plaintiff vigorously denied that it ever approved a sublease and rejects as hearsay any statements by World Gas Belize. Plaintiff's Reply [DE 40]. This

---

[3] The statement in Mr. Quintero's affidavit regarding what Suzette Neal of World Gas Belize told him is hearsay and not admissible under Fed. R. Civ. P. 56(c)(4).

action followed on May 19, 2010.

Plaintiff moves for summary judgment on its single claim for breach of contract, seeking the full one year charter hire amount of $4,562,500.00 USD, plus the bunkers (fuel onboard) of $18,868.00, plus pre-judgment interest from March 25, 2010. Defendant opposes the motion.[4]

## II. DISCUSSION

### A.  Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must point out to the Court that "there is an absence of evidence to support the non-moving party's case."  Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of Federal Rule of Civil Procedure 56(e), "[i]f a party fails to properly support an assertion of fact or fails

---

[4]  Defendant QV filed its own counterclaim for breach of contract against Plaintiff for Blue Marine's unreasonable withholding of consent to a sublease, seeking damages of $4,680,000 [DE 10].  Neither side filed a motion pertaining to the Counterclaim.

to properly address another party's assertion of fact [the Court may] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

### B.  Breach of Contract

Although the claim to be decided is a simple breach of contract action, because the contract involved the chartering of a vessel, this action is before this Court upon admiralty jurisdiction.[5] Sea Lane Bahamas Ltd. v. Europa Cruises Corp., 188 F.3d 1317, 1320 (11th Cir. 1999). Although general maritime law is federal, when "neither statutory nor judicially created maritime principles provide an answer to a specific legal question, courts may apply state law provided that the application of state law does not frustrate

---

[5] The Complaint alleges jurisdiction under 28 U.S.C. § 1333, admiralty and maritime jurisdiction and does not contain a jury demand. Complaint, ¶ 1 [DE 1]. The Answer, Counterclaim, and Affirmative Defenses does not contain jurisdictional allegations and also does not contain a jury demand [DE 10], though the docket text associated with this filing includes the phrase "with Jury Demand." Given the lack of a jury demand within the pleading itself, combined with the lack of any jurisdictional allegations other than maritime and admiralty jurisdiction, the Court concludes that this case will be tried to the Court.

national interests in having uniformity in admiralty law." Sea Byte, Inc. v. Hudson Marine Management Services, Inc., 565 F.3d 1293, 1298 (11th Cir. 2009) (quoting Coastal Fuels Marketing, Inc. v. Fla. Express Shipping Co., Inc., 207 F.3d 1247, 1250-51 (11th Cir. 2000)). There is no dispute that the parties had a binding contract with sufficient specification of terms. The parties do dispute the existence of a breach, and whether damages have been proved. Sweet Pea Marine, Ltd. v. APJ Marine, Inc., 411 F.3d 1242, 1249 (11th Cir. 2005) (to prove a claim regarding repair of vessel, a plaintiff must prove the existence of a maritime contract, breach, and damages).

Plaintiff's primary argument in favor of summary judgment is that the charter agreement required QV to make a one month payment upon the commencement of the charter hire on March 25, 2010, and that QV's failure to pay resulted in an acceleration of the entire year's charter hire cost becoming due. Clause Q of the Additional Clauses of the "Shelltime 4 Dec. 1984 Charter Party" form contract that is part of the Charter Agreement, states: "Hire Payment: Hire due under this Charter Party shall be paid directly to owners bankers monthly in advance: First Hire and value of bunkers remaining onboard on delivery to be paid at vessel's delivery." Pages 12-13 of 22 [DE 1-3 and 35-2]. There appears no dispute that the initial bill was not paid by Defendant.

Defendant argues that Blue Marine was not the "owner" of the vessel and therefore the failure to pay Blue Marine was not a breach. Defendant contends that the Agreement states that the owner is "Britannia." Defendant's Response to Motion at p. 5 [DE 35]. However, a full reading of Clause H reveals that "Britannia" is the owner's insurer ("The Owner's P and I Club is Britannia"). Page 11 of 22 [DE 35-2]. There are no facts to dispute that Blue Marine is the owner of the vessel.

Defendant impliedly asserts that Plaintiff's alleged breach of failing to approve the sublease on April 7, 2010, because Plaintiff had leased the vessel to another party, somehow releases Defendant from its own breach of non-payment of the initial first month's charter hire.  It is unclear whether Defendant makes this argument in support of summary judgment on its own counterclaim or in response to Plaintiff's claim for breach.  Because QV did not file its own motion for summary judgment, nor state that its response contained a cross-motion, the Court can only presume that Defendant's breach argument is made to absolve itself of complying with the contract.  The Court concludes that Defendant's duty to pay Plaintiff arose on March 25, 2010, prior to any evidence that Defendant sought authorization from Plaintiff to sublease the vessel.

Even if Defendant had put forth sufficient and admissible evidence that Plaintiff may have reneged on an agreement to sublease the vessel, this evidence would not be a defense to Defendant's breach of non-payment of the initial first month's hire cost.  The Court is left with little choice but to conclude that Defendant has failed to properly address Plaintiff's assertions of fact with regard to non-payment under the plain language of the Charter Agreement, and that Plaintiff has met its burden under Rule 56 to show that there is no genuine dispute of material fact as to liability on Plaintiff's claim for breach of contract.

### C.  Damages

Plaintiff seeks a full year's worth of the charter hire based upon Clause 9(a) in the standard Form No. 17-11A, Shelltime 4, December 1984, Time Charter Party [DE 27-2, p. 26 of 40].  This provision states that "in default of such proper and timely payment, (a) Owners shall notify Charterers of such default and Charterers shall within seven days

of receipt of such notice pay to Owners the amount due including interest, failing which Owners may withdraw the vessel from the service of Charterers without prejudice to any other rights Owners may have under this charter or otherwise." Id.  Defendant opposes this relief, stating that Blue Marine has a duty to mitigate its damages during the period of the charter.

The Court first concludes that the contract provision in Clause 9(a) says nothing about acceleration of all amounts due over the course of the entire Agreement.  Even if it did, Defendant is correct that Plaintiff has a duty to mitigate its damages in this admiralty case.  Frederick v. Kirby Tankships, Inc., 205 F.3d 1277, 1286 (11th Cir. 2000) (cases cited therein).  It does not seem plausible that after Defendant failed to make the initial payment by the deadline of April 7, 2010, and Plaintiff exercised its right to withdraw the vessel from service of the Charter Agreement, that the vessel did no service for hire to anyone over the course of the remaining period.  The Court will therefore not enter judgment for the entire amount of the charter hire.[6]  The issue of damages will be left for trial.

### D.  Defendant's Motion for Extension of Time

Two weeks after Plaintiff timely moved for summary judgment, Defendant moved for an extension of time of thirty days to respond to the motion because additional discovery was needed [DE 33].  However, the motion was denied for failure to consult

---

[6] QV did plead failure to mitigate damages as an affirmative defense. Defendant will have the burden of proving breach of Plaintiff's mitigation duty at trial. Frederick, 205 F.3d at 1286 (quoting Fashauer v. New Jersey Transit R. Operations, Inc., 57 F.3d 1269, 1289 (3rd Cir. 1995).

with opposing counsel as required by Local Rule 7.1.A.3 [DE 34]. The Court also noted that because the only reason given for the failure to complete discovery within the time prescribed in the Scheduling Order [DE 15] was the high level of counsel's litigation schedule, Defendant had failed to show sufficient good cause for a discovery extension. Defendant then filed an opposition to the motion for summary judgment and a new motion to allow limited discovery of two employees of Blue Marine. Again, the only reason given was "the high level of litigation engagements in undersigns [sic] calendar." Page 1 of Defendant's Motion for Extension of Time [DE 36]. Plaintiff opposes the motion, stating that it was Defendant who delayed discovery.

    The Court again concludes that despite Defendant's need to find further information regarding Plaintiff's operations, particularly regarding mitigation of damages, Defendant has failed to show sufficient good cause for an extension of the discovery deadline. Defendant cannot show prejudice, however, as the Court's ruling on summary judgment regarding breach was based upon the plain language of the parties' contract, and the Court is not entering final judgment at this time because of an uncertainty regarding the amount of damages.

### III. CONCLUSION

    The Court will grant summary judgment to Plaintiff on the issue of Defendant's breach of contract. The issues remaining for trial are Plaintiff's damages and Defendant's counterclaim for breach for an unreasonable refusal to approve a sublease of the vessel.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Summary Judgment [DE 27] is hereby **GRANTED in part**, as explained above;

2. Defendant's Motion for Extension of Time to Complete Discovery [DE 36] is hereby **DENIED**;

3. The parties' joint pretrial stipulation remains due on March 7, 2011, with Calendar Call remaining set for March 10, 2011;

4. **Calendar Call is rescheduled for 8:45am on March 20, 2011**.

**DONE AND ORDERED** in Chambers, at Fort Lauderdale, Broward County, Florida, this 3rd day of March, 2011.

JAMES I. COHN
United States District Judge

Copies furnished to:

counsel of record on CM/ECF